## ELIZABETH HOLLY

### v.

## WILLIAM H. H. AUGUSTINE.

1. REPLEVIN—DECLARATIONS OF OWNERSHIP BY THE DEBTOR.—In replevin for property levied upon by virtue of an execution, evidence was permitted of declarations of ownership of other property, by the judgment debtor made to the constable at a time when other executions were presented for payment. The declarations were not made in the presence or hearing of the claimant of the property, nor does it appear that they were made before or after the alleged sale to the claimant. If such declarations were made before the sale, the testimony was irrevelant; if after, it was improper. The judgment debtor cannot by his own declarations create the evidence upon which the property might be applied to the payment of his own debts, after he had once disposed of it to the claimant.

2. QUESTION OF FRAUDULENT SALE—INSTRUCTION—LAW AND FACT.— Instructions asked by the plaintiff, wherein the question whether the gift or sale to the claimant was fraudulent, intended to hinder or delay the creditors of the judgment debtor, were properly refused. Instead of the law being stated by the court, both the law and the fact was left to the consideration of the jury.

3. QUESTIONS OF LAW IN INSTRUCTIONS.—Instructions leaving the jury to settle questions of law, undirected, are erroneous.

4. INSTRUCTIONS NOT REFERRING TO THE PROPERTY IN SUIT.—The qualifications attached by the court to the instructions given, were on a collateral subject, and did not apply to the hay and grain, the property in suit. The use of the farm may have been fraudulently given, and the sale of the chattels mentioned in the instructions might have been fraudulent, and yet the renting of the farm may have been fair and honest, and the hay and grain have been raised by the claimant and her husband. The instructions, to say the least, were inapplicable to the controverted facts in issue, and calculated to mislead.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, for appellant.

Messrs. JORDAN & STOUGH, for appellee; that circumstances tending to show fraud are always admissible; and a jury may infer fraud from circumstances, cited Reed et al. v. Noxon, 48 Ill. 323; Bryant et al. v. Simoneau, 51 Ill. 324; Strauss et al. v. Kranert, 56 Ill. 254; Carter v. Gunnels et al. 67 Ill. 270; O'Donnell v. Segar, 25 Mich. 367.

That appellant is bound by the statements of her husband, acting as her agent: Doan et al. v. Duncan, 17 Ill. 274; Goodrich v. Hanson et al. 33 Ill. 499; Whiteside v. Margarel, 51 Ill. 507.

There being no visible change of possession, the declarations of the judgment debtor subsequent to the pretended sale are admissible against appellant: Whitaker v. Wheeler, 44 Ill. 440; Amick v. Young et al. 69 Ill. 542; Wyckoff v. Carr, 8 Mich. 44.

Appellant and the judgment debtor had entered into a combination to defeat his creditors and his declarations as to the ownership of the property are admissible against appellant: Barron v. The People, 73 Ill. 256; Philpot et al. v. Taylor, 75 Ill. 309; 1 Greenleaf on Ev. § 111.

There being no visible change of possession after the pretended sale, it was fraudulent as to creditors: Topping v. Lynch, 2 Rob. 484; Butler v. Stoddard, 7 Paige, 163; Jones v. O'Brein, 4 J. & Sp. 58; Searing et al. v. Butler et al. 69 Ill. 575.

The verdict of a jury will not be disturbed when the evidence is conflicting, unless it is manifestly against the weight of evidence: Morgan v. Ryerson, 20 Ill. 344; Martin et al. v. Ehrenfels, 24 Ill. 187; Pullian v. Ogle, 27 Ill. 189; Millikin v. Taylor, 53 Ill. 509.

It is the province of a jury to determine upon the credibility of a witness, and the mere number of witnesses to a fact should not always control; First Nat. Bank v. Haight, 55 Ill. 191; Carey v. Henderson, 61 Ill. 378; Chicago City R'y Co. v. Young, 62 Ill. 238; C. B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; Gill v. Crosby, 63 Ill. 190; Corgan v. Frew, 39 Ill. 31; McClurkin v. Ewing, 42 Ill. 283.

A sale of personal property not accompanied by a continuous and visible change of possession, is fraudulent and void as to the creditors of the vendor: Rev. Stat. 1877, 521; Rhimes v. Phelps, 3 Gilm. 455; Thompson v. Yeck, 21 Ill. 73; Rothgerber et al. v. Gough, 52 Ill. 436; Topping v. Lynch, 2 Rob. 484; Butler v. Stoddard, 7 Paige, 163; Stanley v. Cobbins, 36 Vt. 422; Gleason v. Day, 9 Wis. 498; Smith v. Welch, 10 Wis. 91; Osen v. Sherman, 27 Wis. 501; Hilliard on Sales, 176.

LELAND, J. This was an action of replevin, brought by appellant against appellee, who, as a constable, had taken corn and hay on execution against Geo. P. Augustine, father of appellant. On the trial below the attorneys, to save trouble, entered into this stipulation: " Stipulating to dispense with proof of demand and refusal before suit brought, and issue levy and proof of execution and judgment in this case; it is agreed that the only question in issue shall be whether the plaintiff, or Geo. P. Augustine, at the commencement of this suit was the owner of the property replevied."

After the trial had progressed awhile, the attorneys found that they did not agree as to the proper construction to be put upon this stipulation; and when it came to drafting instructions they continued to disagree. And thus, as is often the case, the attempt to save a little trouble made more than it would if they had been less economical.

This is not the worst of it. The writer of this opinion and

his brethren are not entirely harmonious on the subject.    The
strict literal construction, perhaps, is that it means who, *inter
partes*, was the owner, the father or his daughter?

The writer of this opinion is disposed, after construing it by
the light of surrounding circumstances, to say that it means
who, as against the constable with the execution, was the owner
of the property, and so his Honor, the judge presiding at the
trial, thought.    Although, quite unusual, a masculine jury
found against a feminine plaintiff, which makes rather a *prima
facie* case that the jury was right; we apprehend, however,
because the law of the trial required it.

Appellant, who was a married woman, claimed that in
August, 1873, she and her husband were living with her father
on the farm of the latter; that her father's wife, who was her
mother, was ill; that she and her husband were about to leave
for Chicago, and had their trunks packed; and that under these
circumstances her father told her that if they would stay, and
that if she would take charge of the house, as housekeeper, he
would give her the use of the farm, and give her also the stock
and farming utensils on it, and the household goods, the whole
of no great value; that her father was in an unembarrassed and
comfortable pecuniary condition at this time; that she accepted
the proposition and remained, and that she was housekeeper,
and that she worked the farm through her husband.    Her
mother died the following September.

The theory of appellee is, of course, the usual one—that the
father was the real owner of the stock, farming utensils, furni-
ture and farm, as before; and that the arrangement was one to
avoid the inconveniences attendant upon his having too many
creditors.    Appellant and husband remained on the farm during
the years 1874, 1875 and 1876, and were there when the levy
was made on the corn and hay raised by them in 1876.    The
husband attended mainly to the business of farming.

The father was rather a coal miner than a farmer.    He also
kept store a little.    The evidence was conflicting, and there
was no such preponderance in favor of the plaintiff below, as to
render it proper for that reason alone, to disturb the finding,
although as to the corn and hay, the evidence preponderates in

favor of the daughter and husband having raised it, rather than that the father did. It would seem that they carried on the farm, and allowed him to attend to his store-keeping and mining business, while they raised the crops. If this were so, it does not matter much whose the farming tools, stock and household goods were in 1873, except as a circumstance from which it might be inferred that if there were deception 'as to them, there might be as to the corn and hay raised in 1876.

The. rulings in relation to the admissibility of evidence were in some instances erroneous and somewhat peculiar.

One Bailey was permitted, against objection, to testify that the husband came to his place in Mazon to buy a boar-pig, and told witness he was buying the pig for Geo. P. Augustine, as near as he could recollect; that it was to go on the farm there. A motion to strike out this evidence was made, and overruled. One Ferris was allowed, against objection, to state for defendant that the father offered to sell him some cattle in 1876, also that he owed him, and proposed to give a mortgage upon some horses and a mower. After he had done testifying, a motion was made by plaintiff's counsel to strike out all the evidence of the witness, which was granted, and said evidence ruled from the jury. Then there was a motion to strike out all the evidence offered by defendants in relation to other property than that replevied, and the motion was also granted except as to the evidence of Bailey about the boar-pig.

After this the defendant Augustine, the constable, testified that he had previously levied upon some cattle upon the farm, which the father turned out as his. And thereupon the court, either because of this evidence, or because of a change of opinion otherwise produced, *sua sponte* directed that the testimony of the witness Ferris, and the evidence heretofore excluded in relation to other property than that replevied in this suit, be restored to the jury, and that the previous ruling excluding the same, be rescinded, to which plaintiff excepted.

Objection was made by the plaintiff to a conversation held between the defendant and the father in relation to the property other than that in suit, which defendant was called upon by his attorney to state as a witness, and which conversation

was not in the presence and hearing of plaintiff. The court allowed the witness to introduce his own conversation, as well as that of the father, in evidence. The substance of the conversation was that when witness previously went to the father with one other execution, he told witness that he would turn out property to satisfy it, if he would give him the full time of the execution. He said: " Go and take some two-year olds —go and take any of them; they are all mine." " He did not tell me the cattle or property belonged to Mrs. Holly at the time of presenting any execution." Witness also said that he levied on the cattle, and sold part—that he levied four executions.

It does not appear, by the evidence of this witness, whether the levy of other executions was before or after the alleged gift, or rather sale, from the father to the daughter; but perhaps by the evidence of the latter two, it is made to appear to have been after. If before, it was irrelevant; if after, improper. Randegger v. Ehrhardt, 51 Ill. 101; Miner v. Phillips, 42 Ill. 123; Wheeler vMcCorristen 24 Ill. 40.

Even if the court explains to the jury that they should only consider the evidence for the purpose of showing fraudulent intent on the part of the vendor, it is improper. Gridley v. Bingham, 51 Ill. 153.

The transaction between the father and the daughter was rather a sale for a valuable consideration than a gift. In either event, however, the father could not, by his own declarations, create the evidence upon which the property might be applied to the payment of his own debts, after he had once disposed of it to his daughter. The conversation was not, it is true, as in the cited cases, about the very property in controversy, but the principle is the same, especially as the whole case seems to have been tried as though about these chattels.

Some of the instructions were, we think, erroneous. The writer is not disposed to say anything about those which give construction to the stipulation. As the case is to be reversed, the attorneys can rescind it and make a better one. We do not consider it anything more than one for the purposes of that trial.

The plaintiff's second, fifth, sixth, seventh, eighth and ninth were properly refused, because they ignored the question of a contrivance to hinder, delay or defraud creditors.

Conceding, for the sake of the argument, that the question whether the sale or gift was fraudulent as to creditors, was in the case, notwithstanding the stipulation, we think the court erred in the manner of leaving this question of fraud to the jury. Instead of the facts being stated by the court, the jury was allowed to determine both the law and the fact.

To one of the instructions of plaintiff this was added: " And in determining the question of ownership the jury is to consider the evidence bearing upon the question of possession of the property, and whether there were any acts of Mrs. Holly and G. P. Augustine which *in law* would be fraudulent against the creditors of the said Geo. P. Augustine."

To another this was added: " unless the jury shall believe, from the evidence, that the acts by Mrs. Holly and Geo. P. Augustine were fraudulent *in law, so as to render the contract between them void* as to the creditors of said Augustine."

To another this was added: "Unless the jury shall believe, from the evidence, that the possession and control of said property so remained with said G. P. Augustine *as to make his contract fradulent in law* as to his creditors."

There should have been a statement of the facts necessary to make the sale or gift fraudulent as to creditors, either in these qualifications, or by reference to, and the adoption of, facts stated elsewhere. The jury are left to settle questions of law, undirected: White v. Maitland, 71 Ill. 250; Mitchell v. The Town of Fond du Lac, 61 Ill. 174; Bullock v. Narratt, 49 Ill. 62.

Again, these qualifications are on a collateral subject, and do not apply to the property in suit—corn and hay. When the alleged gift or sale was made, there were some farming implements, three or four horses, some hogs, a few cows, some young cattle, household furniture, etc., and the instructions seem all to be on the subject of these chattels. The standing corn and the hay were not sold, nor given by the father to the daughter. The use of the farm may have been fraudulently given, but the daughter and her husband raised these crops. There may

have been a fraudulent sale of these chattels, and yet the renting the farm may have been fair and honest. The instructions, to say the least, were inapplicable to the controverted facts in issue, and calculated to mislead.

This is also the case as to the defendant's given instructions. They are all about sales and gifts of personal property, not about fraudulent leasing of land, and crops raised thereon: "The jury are instructed that if the father sold these goods and chattles, that is, horses, hogs, farming implements, cattle, household furniture, etc., and remained in possession, then the raising the corn and hay was fraudulent, and the jury should find for the defendant."

The following are three of the defendant's given instructions:

"If the jury believe, from the evidence, that after August, 1873, there was not an actual, public and continued change of possession of the goods and chattels alleged by plaintiff to have been given her by Geo. P. Augustine, and if Geo. P. Augustine remained in possession of said goods and chattels and the farm products for the purpose of selling or mortgaging in his own name said goods, chattels and farm products, even if he did so as agent for Elizabeth Holly, the transaction was void as to creditors of Geo. P. Augustine, and *the jury will find for the defendant, and the issues in this case are for him.*"

"Whenever the vendor of personal property retains, apparently, the same possession of the property after the sale as before, and the change of possession is in no way indicated to the public, the sale is void in law as to creditors of the vendor; a sale of personal property without a public and continued change of possession is good as between the vendor and vendee, but not as to the creditors of the vendor. Now, if the jury believe, from all the evidence in this case, that there was not a public and continued change of possession, but that Geo. P. Augustine retained, apparently, the same possession of the property after as before the sale, and that the change of possession was in no way indicated to the community, than on this point *the law is for the defendant, and the jury will so find.*"

"A sale of goods is fraudulent as against creditors, unless

accompanied by an actual and continuous change of possession. If the vendor remain in possession for the purpose of controlling and managing the goods as agent for the vendee, the transaction is void as to creditors. Now, if the jury believe, from all the evidence in this case, that Geo. P. Augustine retained apparently the same possession of these goods after the pretended sale to his daughter, and controlled and managed the same as her agent, and such agency was not revealed to the community, then the transaction was void as to his creditors, and *your verdict must be for the defendant.*" The italics are ours.

Neither one of the three instructions has anything to do with the growing corn, and the hay replevied. There was no evidence about the corn and hay having been mortgaged. The jury were therefore instructed that if they believed, from the evidence, that horses, hogs, cattle, farming implements and household furniture, etc., were sold or given by the father to his daughter in 1873, and that he remained in possession after the sale and gift, that therefore there was some fraud as to the corn and hay raised on the farm in 1876, and *the jury must find for the defendant.* This appears to us to be a *non sequiter*, and that the instructions are erroneous.

Without pursuing the subject farther, we conclude that there must be a reversal for the errors mentioned.

Reversed and remanded.