Crotty v. Collins.

JEREMIAH CROTTY, Appellant, v. EDWARD COLLINS, Appellee.

APPEAL FROM LA SALLE.

After an agreement to lease premises has been made, but the owner notifies the applicant for a lease, that he cannot take possession until a lease is made and security given for the rent; if the applicant subsequently takes possession, in defiance of the notice, and cultivates a part of the premises at the same time with the owner, he cannot recover of the owner in trespass, although the owner harvested and retained the entire crop.

A notice not to take possession of premises agreed to be leased, where the lessor requires something farther to be done, is all that is requisite to prevent the lessor from being dispossessed of the premises.

THIS case was tried at the November term, 1851, of the La Salle Circuit Court, before T. L. DICKEY, Judge, and a jury, and resulted in a verdict and judgment for Collins for $300. The defendant made a motion for a new trial, which was overruled. The defendant, Crotty, excepted, and took an appeal. The facts of the case will sufficiently appear in the opinion of the court.

GLOVER & COOK and E. S. LELAND, for appellant.

A. HOES and J. H. McGREGOR, for appellee.

CATON, J. The declaration was in trespass *quare clausum fregit*, setting out the abuttals of the *locus in quo*. To which the defendant pleaded the general issue, and also *liberam tenementum*. To which the plaintiff replied double: first, by taking issue generally on the defendant's pleas; to the second plea he replied a demise from the defendant, and that, under the demise, he was lawfully possessed of the premises when the defendant committed the trespass complained of. Then, by leave of the court, the defendant rejoined double: first, taking issue on the demise; and second, denying the possession, as was alleged in the replication. A verdict was found for the plaintiff, which the court refused to set aside upon plaintiff complying with a condition, which, upon the view which we are disposed to take of

the case, it is not necessary particularly to state. To this decision the defendant excepted.

The bill of exceptions shows that the defendant was the owner and possessed of a large field, of which the *locus in quo* formed a part; that in December, 1849, a verbal agreement was entered into between the plaintiff and defendant, that the defendant would let the plaintiff have and occupy the forty acres in question for one or two years, as the plaintiff should wish, at an annual rent of twenty dollars; that the defendant should repair the fences, and let the plaintiff into possession in the spring of 1850; that afterwards, and before the plaintiff had entered into the possession of the premises, the defendant requested the plaintiff to enter into a written contract on the subject, with the plaintiff's mother as security, and forbade the plaintiff entering into possession till such a contract should be executed. The evidence, as given in the bill of exceptions, further showed that the plaintiff's servant, by his direction, in the month of April, 1850, and before any ploughing had been done on the premises, let down the fence inclosing the field, and was about to drive in a team for the purpose of ploughing for the plaintiff, when the defendant came and forbade him, saying " You must not go in there till they have signed the writing," when the servant went away. On the day following the plaintiff and his servant went to the premises, and when they were about going into the field the defendant again came and forbade them, when the plaintiff replied to the defendant, " I am going in, and you may drive us out if you can," and they went in and proceeded to plough the field for a crop of corn. This was the first ploughing done on the premises that spring. The testimony also shows that a crop of corn was raised upon the premises that season; that each planted a part of the ground, and each planted and cultivated a part of the corn, each claiming the possession and right to the whole; that sometimes both parties with their servants were at work upon the crop of corn at the same time, in different portions of the field. After the corn was ripe, the plaintiff went with his wagon and horses and picked a part of a load of the corn, and left them temporarily, when the defendant took possession of them, drove them up to his house, and impounded the

Crotty *v.* Collins.

horses. The defendant took off the entire crop, which was worth about three hundred dollars.

The only question which we shall consider is, whether, from this state of facts, the plaintiff was entitled to recover. We think not. It may be admitted that there was sufficient evidence to establish the demise, but it is clear that before the plaintiff attempted to take possession under the lease, it was repudiated by the defendant unless the defendant obtained security for the payment of the rent. Nor did the plaintiff ever obtain peaceable possession of the premises, either as tenant under the demise or in any other capacity. When he attempted to take possession, first by his servant and then by himself, the defendant was there on both occasions and forbade him, and resisted him so far as the law would require him to resist. He was not bound to resist with the strong hand, or subject himself to personal violence, in order to prevent the party from taking possession under the lease. He was not bound to commit a breach of the peace, and the resistance which he did make was as effectual to protect him from being dispossessed as if he had used actual force in his resistance. The premises were not vacant, as was assumed on the argument, for Crotty was and had been for a long time in the actual possession, and he was present protecting that possession by an actual resistance of the intrusion made upon him. This is not the case of a lessee, with the right of possession, making a peaceable entry into vacant and unoccupied premises. Nor was the occupancy, which the plaintiff did obtain by violence, exclusive and entire, for the defendant cultivated the ground and tended the crop as much as the plaintiff did. He never at any time abandoned or gave up his possession to the plaintiff, but continued as before in the use and occupancy of the field. The case is even much stronger for the defendant than as if he had abandoned the premises after the forcible entry made by the plaintiff and left him to the exclusive cultivation thereof, and even then he would not be entitled to recover unless the jury might infer, from the circumstances and his subsequent conduct, that he peaceably acquiesced in the possession taken. Here there can be no pretence of any such acquiescence. It takes something more to make out a change of

48*

possession than is required to establish the continuance of a possession. Although the plaintiff may have been entitled to the possession, he became himself a trespasser upon the actual and open possession of the defendant, when he entered with a strong hand in the face and defiance of the immediate and direct protestations and resistance of the defendant, who was there all the time maintaining his exclusive control. If the plaintiff was wronged by the violation of the agreement, it was not his place to undertake to right himself himself by violence. The agreement to lease was executory; and the only rights he could acquire under it, until he could obtain the peaceable possession of the demised premises by the consent or abandonment of the defendant, was a right of action against Crotty for his violation of the agreement. The evidence here given shows that the continued possession was, during the whole time, in the defendant, and not in the plaintiff; and we cannot doubt for a moment that the defendant was entitled to a verdict. There were some other questions made at the bar in the discussion of the evidence, but, as this seems to us conclusive, we deem it unnecessary to advert to them. The judgment of the Circuit Court must be reversed, and the cause remanded.

*Judgment reversed.*