### In re BUNTING.
No. 1624.

District Court, E. D. Illinois.
Aug. 25, 1932.

Seventeen days later, on October 12, 1931, the mortgagor was adjudicated bankrupt in this court. At that time, the crop levied upon under said execution had not been severed. Though a custodian was in charge of the same, proposed sale thereof was restrained by this court, and thereafter in due season the trustee caused the corn to be husked and cribbed.

The mortgagee diligently filed its petition with the referee, setting up its mortgage and the covenants therein, under and by virtue of which, the land and rents, issues, and profits thereof were conveyed as security for the debt. The mortgage was, at the time of the taking of the judgment, issuance of execution, and levy of same upon the corn, in default by reason of tax sales and nonpayment of taxes and interest then past due. Under the terms of the mortgage these defaults were, in case of foreclosure, justification for the appointment of a receiver. The mortgagee prayed that the trustee be directed to surrender to it the corn here involved.

The trustee, subrogated to the rights of said judgment creditor, claims a lien upon the corn by virtue of the levy of execution superior to the right of the mortgagee. This contention the referee sustained, and the mortgagee seeks a review.

The only question of law involved is as to the respective priorities of the lien upon growing crops unsevered from the soil of a judgment creditor of the mortgagor and that of a real estate mortgage in default, mortgaging rents, issues, and profits. Upon this question, we are governed by the property rules of Illinois.

In Anderson v. Strauss, 98 Ill. 485, the Supreme Court expressly held that the seizure and sale of growing wheat upon execution issued upon a judgment against a mortgagor is invalid as against the mortgagee. The court held that the sale of such crops upon execution did not thereby work a severance of the same from the soil, that they remained a part of the real estate and that the mortgagee's lien thereon was superior to that of the judgment creditor. This case was followed with approval in the comparatively recent case of Chicago Joint Stock Land Bank v. Daniel P. McCambridge et al., 343 Ill. 456 at page 460, 175 N. E. 834, 836, where the court says: "The general rule of the common law is that growing crops form a part of the real estate to which they are attached and follow the title thereto. Altes v. Hinckler, 36 Ill. 275, 85 Am. Dec. 407; McGinniss v. Fernandes, 135 Ill. 69, 26 N.

Green & Palmer, of Urbana, Ill., and Asa S. Chapman, of Champaign, Ill. (Enos L. Phillips and Jule Fritz, both of Urbana, Ill., of counsel), for petitioners.

Busch & Harrington, of Champaign, Ill., for trustee.

LINDLEY, District Judge.

On September 25, 1931, after the execution and recording of a real estate mortgage to the petitioner, the Royal State Bank of Royal, Ill., obtained a judgment against the mortgagor, the bankrupt herein. Execution issued upon the same, and upon September 26, 1931, a levy was made upon certain corn growing on the land covered by the mortgage to petitioner.

E. 109, 25 Am. St. Rep. 347. Therefore a purchaser who has acquired title to the land through a sale upon a decree of foreclosure of a mortgage is entitled to the growing crop sown after the execution of the mortgage and not harvested before the purchaser acquires title to the land."

In Jones v. Adams, 37 Or. 473, 59 P. 811, 62 P. 16, 50 L. R. A. 388, 82 Am. St. Rep. 766, the Supreme Court of Oregon held a chattel mortgage upon growing crops upon mortgaged land, executed before foreclosure of the mortgage, not a constructive severance from the soil, such as would prevent the passing of title to such crops to a purchaser of the land on foreclosure sale made thereafter. The court said: "If the annual crops are not severed from the soil prior to the sale, they pass, with the title, to the purchaser, as against the mortgagor and parties claiming an interest therein under him subsequent to the mortgage. * * * This is elementary law, and is not questioned by the defendant, but his contention is that the giving of the chattel mortgage to the ditch company by Hall, prior to the sale under the foreclosure decree, was a constructive severance of the growing crops. There is authority for such view (Willis v. Moore, 59 Tex. 628 [46 Am. Rep. 284]; White v. Pulley [C. C.] 27 F. 436), but it does not commend itself as the better one. The general rule of the common law is that growing crops form a part of the real estate to which they are attached, and follow the title thereto. They are, however, for many purposes, regarded as personal property, and subject to voluntary sale or mortgage by the owner (Reed, St. Frauds, § 708); but the right of a purchaser or mortgagee is subject to the contingency that it may be wiped out by a foreclosure and sale under a mortgage given by the vendor or mortgagor on the land before the crop was sown, unless it is severed from the soil prior to such sale. Sherman v. Willett, 42 N. Y. 146. A real-estate mortgage is not only a lien upon the land, but also upon the annual crops growing thereon, unless they belong to a tenant, subject only to the right of severance prior to the sale and entry under the mortgage."

To the same effect is John Hancock Mutual Life v. Watson, 200 Ill. App. 315.

▆ These holdings are in accordance with the rule in Illinois that crops not severed from the soil, although matured and ready to be gathered, pass to the grantee of the real estate upon delivery of a deed containing no reservation of the crops to the grantor. See Firebaugh v. Divan, 207 Ill. 287, 69 N. E. 924. As a part of the real estate, such growing crops obviously pass to a mortgagee who receives the legal title subject to defeasance. Consequently the mortgage has a valid conveyance of the title, which is good as against the world, to the soil and the growing crops thereon, all of which constitute a primary fund for the payment of mortgage indebtedness. See Rohrer v. Deatherage, 336 Ill. 450, 168 N. E. 266; Greenebaum Sons Bank & Trust Co. v. Kingsbury, 248 Ill. App. 321.

What has been said is applicable to a case only where there has been no severance of the growing crop. Where such severance has occurred and growing crops have become personal property, there is involved the further question of the validity of a real estate mortgage not in conformity with the requirements of Illinois statutes on chattel mortgages as a lien upon personal property and the further question of the legal effect of the severance and conveyance of the personal property as against the mortgagee before formal assertion of the latter's rights.

▆ From what has been said, it is apparent that the solution of the question before the court lies in the proposition that the mortgagee has of record a valid conveyance of all rents and profits, as well as the real estate; that the levy of execution thereon, while the same remains real estate, is invalid and ineffective as against the mortgagee of the real estate; that the trustee in bankruptcy, subrogated to the rights of the judgment creditor, receives no title superior to that of the realty mortgagee; and that the rights of the mortgagee must prevail as against the trustee unless there be some defect or lapse in its chain of title.

▆▆ It is elemental that a severance and sale by a mortgagor prior to assertion of the mortgagee's rights conveys a clear title to third person, and it is consonant with such doctrine also that, if the mortgagee delays assertion of his rights until after severance and conveyance of the mortgagor, he is estopped to assert his lien against the third person. The adjudication in bankruptcy was a seizure of all bankrupt's property by the court, which, by its action, gathered unto itself jurisdiction and control of the entire subject-matter. The mortgagee could not thereafter, without the consent of that court, proceed to foreclose, and the seizure by the bankruptcy court was sufficient to maintain the status of the lien of the mortgagee, and to protect fully its rights, when, as here, it was followed by the intervention of the mort-

gagee asserting its rights. Thus, in Re Wakey, 50 F.(2d) 869, 870, the Court of Appeals for the Seventh Circuit announced that the adjudication of the bankrupt, and the appointment of the trustee, was equivalent to the appointment of a receiver in a foreclosure, and perfected the mortgagee's lien to the rents, issues, and profits. The court said: "It is not questioned but that the rents and profits of land, as well as the land, may be the subject of a valid mortgage lien. Greenebaum Sons Bank & Trust Co. v. Kingsbury, 248 Ill. App. 321. * * * It seems equally clear in Illinois that the lien upon the rents and profits is not ordinarily enforceable until the mortgagee begins foreclosure proceedings, and a receiver, or other officer appointed by the court, takes possession of the property described in the mortgage. Dillon v. Dyer, 258 Ill. App. 144. * * * After the appointment of such receiver in the mortgagee's suit, the mortgagee's right to the rents thereafter collected is clear. Rohrer v. Deatherage, 336 Ill. 450, 168 N. E. 266. * * * In this case the mortgagee made no application for permission to foreclose his mortgage, and not until after two years' rent had been collected by the trustee did he ask to have the same applied upon his mortgage. This failure on his part to assert his lien would have been fatal to his application here but for the intervention of the bankruptcy proceedings. Doubtless the bankruptcy proceedings and the appointment of the trustee dispensed with the requirement that the mortgagee should start foreclosure proceedings and secure the appointment of a receiver. For the mortgagee could not foreclose without the consent of the court, which had appointed a trustee to take possession of the property and collect the rents and profits. Isaacs, Trustee, v. Hobbs Tie & Timber Company, 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, decided February 24, 1931."

It followed, therefore, that, as no severance of the crops had been made at the time of adjudication, and inasmuch as such adjudication worked a segregation of the property and investiture of complete jurisdiction of the same in the court, the mortgagee's rights were diligently asserted by its intervening petition, and the severance by the trustee after the adjudication cannot militate against its title.

It will be the order of the court that the order of the referee be reversed, and the cause re-referred to him, with direction to proceed in conformity with the announcements herein.